FORM B10 (Official Form 10) (10/05)

| United States Bankruptcy Court<br>District of Maryland | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor<br>Sharief, Yolanda X. | Case Number<br>06-18246-NVA | **EXHIBIT A** |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C § 503

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>MD Holdings, LLC<br>C/O James W Holderness, Esquire | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars |
|---|---|
| Name and address where notices should be sent:<br>1029 N Calvert Street 2nd Floor<br>Baltimore, MD 21202<br><br>Telephone Number: (410) 727-1371 | ☐ Check box if you have never received any notices from the bankruptcy court in this case<br>☐ Check box if the address differs from the address on the envelope sent to you by the court<br><br>THIS SPACE IS FOR COURT USE ONLY |
| Last four digits of account or other number by which creditor identifies debtor: | Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated: |

**1 Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☑ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other

- ☐ Retiree benefits as defined in 11 U.S.C § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS#: _____
  Unpaid compensation for services performed
  from _____ to _____
       (date)         (date)

**2. Date debt was incurred:**
7/31/1997

**3 If court judgment, date obtained:**

**4 Classification of Claim** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured NonPriority Claim:** $ _____
☐ Check this box if: a) there is no collateral or lien securing your claim or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C § 507(a)(1)(A) or (a)(1)(B)
☐ Wages, salaries, or commissions (up to $10,000) * earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business whichever is earlier - 11 U.S.C § 507(a)(4)
☐ Contributions to an employee benefit plan - 11 U.S.C § 507(a)(5)

**Secured Claim**
☑ Check this box if your claim is secured by collateral (including a right of setoff)
Brief description of collateral:
☑ Real Estate  ☐ Motor Vehicle
☐ Other _____
Value of Collateral $ **Unknown**
Amount of arrearage and other charges at time case filed included in secured claim if any $ **35,537.65**

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C § 507(a)(7)
☐ Taxes or penalties owed to governmental units - 11 U.S.C § 507(a)(8)
☐ Other - Specify applicable paragraph of 11 U.S.C § 507(a)(_)

* Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**5 Total Amount of Claim at Time Case Filed:** $ _____ $ **59,195.47** $ _____ $ **59,195.47**
      (unsecured)   (secured)   (priority)   (Total)

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

6. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
7. **Supporting Documents:** Attach copies of supporting documents such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien DO NOT SEND ORIGINAL DOCUMENTS If the documents are not available, explain. If the documents are voluminous, attach a summary
8. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>2/7/07 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney if any).<br><br>Nelson G. Morales; Servicing Manager |
|---|---|

Penalty for presenting fraudulent claim Fine of up to $500,000 or imprisonment for up to 5 years, or both 18 U.S.C §§ 152 and 3571

PROOF OF CLAIM

## SUPPLEMENT TO PROOF OF CLAIM OF MD HOLDINGS, LLC
### In re Yolanda X. Sharief; Case no. 06-18246-NVA

Itemized statement of loan balance at petition date:

| | |
|---|---|
| Principal | $33,415.10 |
| Interest | $22,256.05 |
| Escrow shortage | $ |
| Late charges | $1,139.26 |
| Legal fees | $2,385.06 |
| Other charges | $ |
| TOTAL | $59,195.47 |

LIBER 6 6 3 6 PAGE 4 8 1

RECORDING REQUESTED BY AND
WHEN RECORDED, MAIL TO:
ONE STOP MORTGAGE, INC.
ATTN: QA
200 BAKER STREET, #101
COSTA MESA, CALIFORNIA 92626
Loan Number MD011104

Application #:
Record and Return to:

CERTIFIED TITLE CORPORATION
3655-A OLD COURT ROAD
SUITE 1
BALTIMORE, MD 21208
(410) 486-5511

SPACE ABOVE THIS LINE FOR RECORDING DATA

#97-08363 **DEED OF TRUST**

THIS DEED OF TRUST ("Security Instrument") is made on   JULY 31, 1997

The grantor is YOLANDA SHARIEF AND MALIK SHARIEF

("Borrower")

The trustee is MARTIN S. GOLDBERG

("Trustee")

The beneficiary is ONE STOP MORTGAGE, INC., A WYOMING CORPORATION

which is organized and existing under the laws of   WYOMING   and whose address is
200 BAKER STREET, #101, COSTA MESA, CALIFORNIA 92626   ("Lender")

Borrower owes Lender the principal sum of   THIRTY THREE THOUSAND EIGHT HUNDRED FORTY AND 00/100
Dollars (U.S. $33,840.00   ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on SEPTEMBER 1, 2027   This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in   BALTIMORE CITY   County, Maryland:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

MARYLAND - FIXED RATE PROGRAM
#0SM2021 12/96   Page 1 of 10   Borrower's Initials: _____

MDDOTF.05   ORIGINAL

LIBER 6636 PAGE 482

File No 97-08363

### Exhibit "A"

BEGINNING for the same on the northeast side of Fremont Avenue at the distance of 122 feet 11 inches northwesterly from the corner formed by the intersection of the northeast side of Fremont Avenue and the northwest side of Dolphin Street; and at the center of the partition wall there being; running thence northwesterly bounding on Fremont Avenue, 14 feet 9 inches, to the center of the partition wall there being; thence northeasterly at right angles to Fremont Avenue and through the latter partition wall, 110 feet, to the southwest side of a 10 foot alley; thence south easterly bounding on said alley; with the use thereof in common with others 14 feet 9 inches; and thence southwesterly at right angles to Fremont Avenue, and through the center of the partition wall first mentioned, 110 feet, to the place of beginning. The improvements thereon being known as NUMBER 717 NORTH FREMONT AVENUE.

THE BORROWER(S) HEREIN CERTIFY THAT THE PROPERTY WHICH IS THE SUBJECT OF THIS DEED OF TRUST IS THEIR PRINCIPAL RESIDENCE, THAT THEY ARE THE ORIGINAL MORTGAGOR(S) AND THAT THE AMOUNT SECURE HEREIN WAS BORROWED FOR THE PURPOSE OF REFINANCING AN EXISTING DEED OF TRUST RECORDED IN LIBER NO. SEB 5826, FOLIO NO. 028, ON WHICH REMAINS AN OUTSTANDING PRINCIPAL BALANCE OF $21,517.91.

THIS IS TO CERTIFY, that the within instrument was prepared by or under the supervision of the undersigned, an Attorney duly admitted to practice before the Court of Appeals of Maryland.

_____
STEPHEN B. MILLSTEIN, ESQ.

LIBER 6636 PAGE 483

which has the address of  717 NORTH FREMONT AVENUE, BALTIMORE
                                        [Street]                                              [City]
Maryland        21217                                    ("Property Address");
              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
2. **Funds for Taxes and Insurance** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items". Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974, as amended from time to time, 12 U S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

MARYLAND - FIXED RATE PROGRAM
#OSM2021 12/95                Page 2 of 10        Borrower's Initials: ____  ____

MDDOTP.05                                        ORIGINAL

LIBER 6 6 3 6 PAGE 4 8 4

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note

4. **Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due. Any default by Borrower under any such mortgage, deed of trust or other security agreement shall be a default under this Security Instrument and the Note Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any Borrower shall pay these obligations in the manner provided in paragraph 2, or, if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph 4. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance This insurance shall be maintained in the amounts and for the periods that Lender requires The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, any insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as it may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as a Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder and (ii) be subject to the provisions of this paragraph 5.

6. **Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest Borrower may

MARYLAND - FIXED RATE PROGRAM
#OSM2021 12/95          Page 3 of 10     Borrower's Initials: _____

MDDOTF.05                              ORIGINAL

LIBER 6 6 3 6 PAGE 4 8 5

cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender or Trustee with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in court and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instrument as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request

Borrower shall also be in default if, during the loan application process, Borrower gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

MARYLAND - FIXED RATE PROGRAM
#OSM2021 12/95    Page 4 of 10    Borrower's Initials: _____

MDDOTF.05                    ORIGINAL

LIBER5636 PAGE486

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph 14.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

MARYLAND - FIXED RATE PROGRAM
#OSM2021 12/95          Page 6 of 10          Borrower's Initials: _____ _____

MDDOTF.05                         ORIGINAL

LIBER 6636 PAGE 487

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of an Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

MARYLAND - FIXED RATE PROGRAM
#OSM2021 12/95        Page 6 of 10        Borrower's Initials: _____

MDDOTP.05                                ORIGINAL

LIBER 6636 PAGE 488

21. **Acceleration; Remedies.** If any monthly installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other deed of trust or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice and regardless of any prior forbearance. In such event, Lender, at its option, may then or thereafter deliver to Trustee a written declaration of default and demand for sale and shall cause to be filed of record a written notice of default and of election to cause to be sold the Property. Lender shall also deposit with Trustee this Security Instrument and any notes and all documents evidencing expenditures secured thereby. After the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Borrower, shall sell the Property at the time and place specified by Trustee in such notice of sale, or at the time to which such noticed sale has been duly postponed, at public auction to the highest bidder for cash in lawful money of the United States, payable at time to sale, except that Lender may offset its bid to the extent of the total amount owing to it under the Note and this Security Instrument, including Trustee's fees and expenses. Trustee may sell the Property as a whole or in separate parcels if there is more than one parcel, subject to such rights as Borrower may have by law to direct the manner or order of sale, or by such other manner of sale which is authorized by law. Trustee may postpone the time of sale of all or any portion of the Property by public declaration made by Trustee at the time and place last appointed for sale. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof. Any person, including Borrower, Trustee or Lender, may purchase at such sale. After deducting all costs, fees and expenses of Trustee, and of this Security Instrument, including costs of evidence of title in connection with such sale, Trustee first shall apply the proceeds of sale to payment of all sums expended under the terms of this Security Instrument not then repaid, with accrued interest at the rate then payable under the Note or notes secured thereby, and then to payment of all other sums secured thereby and, if thereafter there be any proceeds remaining, shall distribute them to the person or persons legally entitled thereto.

22. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument, the Note and all other notes secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled thereto. Such person or persons shall pay all forwarding fees imposed by Lender, reconveyance fees imposed by Trustee, and all costs relating to the recordation of the reconveyance of this Security Instrument.

23. **Substitute Trustee.** Lender may, from time to time, by instrument in writing, substitute a successor or successors to any Trustee named in the Security Instrument or acting thereunder. Such instrument shall be executed and acknowledged by Lender and recorded in the office of the recorder of the county or counties where the Property is situated and shall be conclusive proof of the proper substitution of such successor Trustee or Trustees. Such successor Trustee or Trustees shall, without conveyance from the predecessor Trustee, succeed to all its title, estate, rights, powers and duties. The procedure herein provided for substitution of Trustees shall not be exclusive of other provisions for substitution permitted by law.

24. **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

25. **Statement of Obligation Fee.** Lender may collect a fee in an amount not to exceed the maximum amount as may from time to time be allowed by law for furnishing any statement of obligation, beneficiary's statement, beneficiary's demand or any other statement or demand regarding the condition of or balance owing under the Note or secured by this Security Instrument.

26. **No Adjustment to Interest Rate or Monthly Payment.** The Note contains provisions which provide for the interest rate and the amount of the monthly payment of principal and interest to be fixed to maturity. These provisions are incorporated herein by this reference.

27. **Offsets.** No indebtedness secured by this Security Instrument shall be deemed to have been offset or to be offset or compensated by all or part of any claim, cause of action, counterclaim or crossclaim, whether liquidated or unliquidated, which Borrower (or, subject to paragraph 17 of this Security Instrument, any successor to Borrower) now or hereafter may have or may claim to have against Lender.

MARYLAND - FIXED RATE PROGRAM
#OSM2021 12/95   Page 7 of 10   Borrower's Initials: _____

MDDOTF 05   ORIGINAL

28. **Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures. In the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph 28, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon hereunder.

29. **Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

30. **Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by law.

31. **Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

32. **Captions.** The captions and headings at the beginning of each paragraph of this Security Instrument are for the convenience of reference only and will not be used in the interpretation of any provisions of this Security Instrument.

33. **Construction of the Security Instrument.** Borrower and Lender agree that this Security Instrument shall be interpreted in a fair, equal and neutral manner as to each of the parties.

34. **Miscellaneous.** When used in this Security Instrument, the terms "include" or "including," shall mean without limitation by reason of enumeration. In this Security Instrument, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

35. **Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or this Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender providing documents or services arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or this Security Instrument.

36. **Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, this Security Instrument, or any other document or instrument executed in connection with this Security Instrument, the Note or any other notes secured by this Security Instrument contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error(s).

37. **Lost, Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, this Security Instrument or any other documents or instruments executed in connection with this Security Instrument, the Note or any other note secured by this Security Instrument (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed or mutilated Loan Document and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Document, and may be treated for all purposes as the original copy of such Loan Document

38. **Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security Instrument and Borrower has not abandoned the Property.

39. **Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 21 of this Security Instrument.

[X] If this box is checked, the following paragraph 40 is agreed to by Borrower:

40. **Owner-Occupancy of Security Property.** As an inducement for Lender to make the loan secured by this Security Instrument, Borrower has represented to Lender that the Property will be occupied by Borrower within sixty (60) days following recordation of this Security Instrument and during the twelve (12) month period immediately following recordation of this Security Instrument as Borrower's primary residence. Borrower acknowledges (a) that Lender would not have agreed to make the loan evidenced by the Note or notes secured by this Security Instrument if the Property were not to be owner-occupied, and (b) that the interest rate set forth on the face of the Note and other terms of the loan were determined as a result of Borrower's representation that the Property would be owner-occupied. Borrower further acknowledges that, amount other things (i) purchasers of loans (including agencies, associations and corporations created by the federal and state governments for the purchase of loans) typically require that properties securing loans acquired by such purchasers be owner-occupied, and will reject for purchase loans for which security properties are not owner-occupied, (ii) Lender's ability to sell a loan or an interest in a loan (which it often does in the ordinary course of business) will thereby be impaired where a security property is not owner-occupied, (iii) the risks involved and the costs of holding and administering a loan are often higher in the case of a loan in which the security property is not owner-occupied, and (iv) if and when Lender makes a loan on the security of non-owner occupied property, Lender typically makes such a loan on terms different from those of loans secured by owner-occupied properties. Accordingly, in the event that (a) within sixty (60) days following recordation of this Security Instrument the Property is not occupied by Borrower as Borrower's primary residence, or (b) Borrower does not continuously live in the property for at least twelve (12) months immediately following recordation of this Security Instrument, Lender may declare all sums secured by this Security Instrument to be immediately due and payable. The rights of Lender hereunder shall be in addition to any rights of Lender under this Security Instrument or allowed by law.

41. **Riders to this Security Instrument.** If checked below, the riders so indicated are executed by Borrower and are attached to, constitute a part of and are recorded together with this Security Instrument, and the covenants and agreements of each such rider are incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if each such rider was a part of this Security Instrument.

[Check applicable box(es)]

| ☐ Planned Unit Development Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
|---|---|---|
| ☐ Rider A | ☐ Rider B | ☐ Rider C |

**MARYLAND - FIXED RATE PROGRAM**
#OSM2021 12/95     Page 9 of 10     Borrower's Initials: _____

ALTIMORE CITY CIRCUIT COURT (Land Records) [MSA CE 164-6636] Book PM 6636 p 0490 Printed 01/08 2007 Online 04/04/2005

DDOTP.05                    ORIGINAL

LIBER 5636 PAGE 491

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Carl H. Lamy_                    _Yolanda Sharief_ (Seal) Borrower
                                  YOLANDA SHARIEF

_Carl H. Lamy_                    _Malik Sharief_ (Seal) Borrower
                                  MALIK SHARIEF

_____           _____ (Seal) Borrower

_____           _____ (Seal) Borrower

---------- (Space Below This Line For Acknowledgment) ----------

STATE OF MARYLAND        )
                         ) to wit:
County OF Baltimore      )

I HEREBY CERTIFY, that on this 31 day of July, 1997, before me, the subscriber a Notary Public of the State of Maryland, personally appeared Yolanda Sharief and Malik Sharief known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within Deed of Trust as the Grantor(s), and acknowledged the same for the purposes therein contained and in my presence signed and sealed the same.

At the same time also appeared _Stephen B. Millstein_ who made oath in due form that (s)he is the agent of the Beneficiary in the within Deed of Trust and is duly authorized to make this affidavit, and that the consideration therein set forth is true and bona fide as therein set forth, and that all sums secured by the within Deed of Trust advanced for purchase money purposes have been paid over or disbursed by the Beneficiary either to the Grantor(s) (or one of them) or to the person responsible for disbursement of the funds in the closing transaction or their respective agent at a time no later than the delivery by the Grantor(s) of the within Deed of Trust, and that this Deed of Trust was prepared by one of the parties named in this Deed of Trust unless the Attorney Certification set forth below has been completed.

IN WITNESS WHEREOF, I have set my hand and official seal.
[NOTARY SEAL]

_Carl H. Lamy_
Notary Public
_Carl H. Lamy_
Printed Name of Notary Public

My Commission Expires: **MY COMMISSION EXPIRES 11/13/99**

**ATTORNEY CERTIFICATION**

The undersigned hereby certifies that the within Deed of Trust was prepared by an attorney or under an attorney's supervision.

_____
(Signature of Attorney)

**MARYLAND - FIXED RATE DEED OF TRUST**
FORM2021 1/95                    10

MDDOTP.03                        ORIGINAL

LIBER 6 6 3 6 PAGE 4 9 2

68.25

RECEIVED FOR RECORD
CIRCUIT COURT FOR
BALTIMORE CITY

97 AUG 23 PM 2: 05

000517

LIBER 6636 PAGE 493

## State of Maryland Land Instrument Intake Sheet
☐ Baltimore City  ☑ County: Baltimore City

Information provided is for use of the Clerk's Office, State Department of Assessments and Taxation and County Finance Office only.
(Type or Print in Black Ink Only-All Copies Must Be Legible)

**[1] Type(s) of Instruments**  (☑ Check Box if Addendum Intake Form is Attached)
Deed | Mortgage | ___ | Other

**[2] Conveyance Type Check Box**
Improved Sale | Unimproved Sale | Multiple Accounts | Not an Arms-Length Sale
Arms-Length [1] | Arms-Length [2] | Arms-Length [3] | Length Sale [9]

**[3] Tax Exempt** (if Applicable)
Recordation:
State Transfer:
County Transfer:
Cite or Explain Authority

**[4] Consideration And Tax Calculations**

| Consideration Amount | | Finance Office Use Only | |
|---|---|---|---|
| | | Transfer and Recordation Tax Consideration | |
| Purchase Price/Consideration | $ | | |
| Any New Mortgage | $ 33,840.00 | Transfer Tax Consideration | $ |
| Balance of Existing Mortgage | $ | X ( %) | $ |
| Other: | $ | Less Exemption Amount - | $ |
| | | Total Transfer Tax = | $ |
| Other: | $ | Recordation Tax Consideration | $ |
| | | X ( per $500 = | $ |
| Full Cash Value: | $ | TOTAL DUE | $ |

**[5] Fees**

| Amount of Fees | Doc. 1 | Doc. 2 | Agent: |
|---|---|---|---|
| Recording Charge | $ 20.00 | $ | |
| Surcharge | $ 1.00 | $ | Tax Bill: |
| State Recordation Tax | $ 68.25 | $ | |
| State Transfer Tax | $ | $ | C.B. Credit: |
| County Transfer Tax | $ | $ | |
| Other: | $ | $ | Ag Tax/Other: |
| Total Fees | $ 93.75 | $ | |

**[6] Description of Property**
SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| District (1) | Property Tax ID No. (2) | Grantor Liber/Folio | Map | Parcel No. | Var LOG (5) |
|---|---|---|---|---|---|
| | 17-33-0411-031 | | | | |
| Subdivision Name | | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | Sq.Ft./Acreage (4) |

Location/Address of Property Being Conveyed (2)
2311 EDITH MOUNT AVENUE BALTIMORE, MARYLAND 21217

Other Property Identifiers (if applicable)    Water Meter Account No.

Residential ☑ or Non-Residential ☐  Fee Simple ☑ or Ground Rent ☐ Amount: $80.00
Partial Conveyance? ☐ Yes ☑ No   Describe/Amt. of SqFt/Acreage Transferred:

If Partial Conveyance, List Improvements Conveyed:

**[7] Transferred From**
Doc. 1 - Grantor(s) Name(s) | Doc. 2 - Grantor(s) Name(s)
YOLANDA SHARIEF
HAMIR SHARIEF
Doc. 1 - Owner(s) of Record, if different from Grantor(s) | Doc. 2 - Owner(s) of Record, if Different from Grantor(s)

**[8] Transferred To**
Doc. 1 - Grantee(s) Name(s) | Doc. 2 - Grantee(s) Name(s)
ONE STOP MORTGAGE INC.

New Owner's (Grantee) Mailing Address
2311 EDITH MOUNT AVENUE BALTIMORE, MARYLAND 21217

**[9] Other Names to Be Indexed**
Doc. 1 - Additional Names to be Indexed (Optional) | Doc. 2 - Additional Names to be Indexed (Optional)

**[10] Contact/Mail Information**
Instrument Submitted By or Contact Person    ☑ Return to Contact Person
Name: MELISSA NICE
Firm: OHIO SAVINGS CORPORATION                ☐ Hold for Pickup
Address: 3601 OLD COURT ROAD
BALTIMORE, MD 21208                           ☐ Return Address Provided

**[11] IMPORTANT** BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER
Agricultural Information: ☐ Yes ☑ No   Will the property being conveyed be the grantee's principal residence?
                         ☐ Yes ☑ No   Does transfer include personal property? If yes, identify:
                         ☐ Yes ☑ No   Was property surveyed? If yes, attach copy of survey (if recorded, no copy required).

**Assessment Use Only - Do Not Write Below This Line**

| Terminal | Agricultural Verified | Whole | Part | Tran. Process Verification |
|---|---|---|---|---|
| | Date Received | Deed Reference | | Assigned Property No. |
| | | To: Map | Sub | Block |
| | | Grid | Plat | Lot |
| | | Use | Parcel | Section | Occ.Cd. |
| | | Town Cd. | Ex. St. | Ex. Cd. | |

**EXHIBIT B**

File No.: FMD06-33

IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| James W. Holderness | * |
| 1029 N. Calvert Street, 2nd Fl | * |
| Baltimore, MD 21202 | * |
| Substitute Trustee(s) | * |
| Plaintiff(s) | * |
| vs | *   Case No. |
| Yolanda Sharief | * |
| Malik Sharief | * |
| 717 North Fremont Avenue | * |
| Baltimore, MD 21217 | * |
| | * |
| Defendant(s) | * |

\* \* \* \* \* \* \* \* \* \*

**LOST NOTE AFFIDAVIT**

State of California, County of San Bernardino, to wit:

I HEREBY CERTIFY that on this 13th day of November, 2006 before me, the subscriber, a Notary Public of the State aforesaid, personally appeared Nelson G. Morales, who acknowledged him/her self to be the Servicing Manager, of MD Holdings, LLC and he/she made oath in due form

1. The original Note has been lost, misplaced or destroyed and cannot be produced at this time.

2. During the time said Note has been lost, misplaced or destroyed MD Holdings, LLC has not conveyed, assigned, pledged, hypothecated, encumbered or otherwise transferred the Note or any of its interest therein to anyone, and said Note is free and clear of all claims and encumbrances; and

3. MD Holdings, LLC agrees to hold harmless and indemnify James W. Holderness, Substitute Trustee(s), should any claim be made against him/them by reason of claimed ownership of the Note by the person or entity other than MD Holdings, LLC.

MD Holdings, LLC

By: _____
Nelson G. Morales   AFFIANT

[Notary Seal: JASON CHOI, Commission # 1621290, Notary Public - California, Los Angeles County, My Comm. Expires Nov 14, 2009]

Subscribed and sworn before me this 13 day of November, 2006

_____
Notary Public

My Commission Expires: Nov 14, 2009